**EXHIBIT A**
**AFFIDAVIT OF SPECIAL AGENT PASQUALE MORRA**

I, Pasquale Morra, do hereby declare and state:

1.  I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since February 2015. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses in violation of federal law.

2.  My experience as a Special Agent includes, but is not limited to, making arrests, interviewing subjects, witnesses and victims, conducting surveillance, writing affidavits for and executing search warrants, analyzing records and working with undercover agents and informants. I am assigned to the Springfield, Massachusetts Resident Agency of the FBI Boston Division, where I am responsible for investigations involving federal financial crimes, which include bank fraud, wire fraud, mail fraud and other criminal activities. Prior to my assignment as a Special Agent, I was employed as a Staff Operations Specialist with the FBI New Haven Division, where I provided intelligence support for investigations involving bank fraud, public corruption, theft from interstate shipments, drug conspiracies, and other criminal activities.

3.  I submit this affidavit in support of a Verified Complaint for Forfeiture *in Rem* against the following property:

    a. U.S. Springfield Model 1868 Style Trapdoor Saddle Ring Carbine bearing serial number 1444 (hereinafter "Serial #1444" or the "Defendant Property").

4.  The information contained in this affidavit is based on witness interviews, conversations with investigators and other agencies involved in this investigation, my personal knowledge and observations during the course of this investigation, my personal training and

experience as a criminal investigator and the review of records, documents, and other evidence obtained during this investigation.

5. This affidavit does not contain all the information known to me and other law enforcement officers regarding the investigation, but only those facts sufficient to establish probable cause for the forfeiture of the Defendant Property.

6. I am currently investigating the theft of a model 1868 carbine with serial number 2234, accession number[1] 2484 (hereinafter "No. 2484") from the Springfield Armory, located in Springfield, Massachusetts, a National Historic site managed by the National Park Service ("NPS"), a bureau of the United States Department of the Interior, by an unknown subject, in violation 18 U.S.C. § 641 (theft of public property).

7. As set forth below, there is probable cause to believe that the Defendant Property is in fact No. 2484, which was unlawfully removed from the Springfield Armory and modified in order to conceal this fact, and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C). Attached hereto at Exhibit 1 are photographs of the Defendant Property.

8. Pursuant to 18 U.S.C. § 641, it is a violation of law to "embezzle[], steal[], purloin[], or knowingly convert[]to his use or the use of another, or without authority, sell[], convey[] or dispose[]of any … thing of value of the United States or of any department or agency thereof …" and to "receive[], conceal[], or retain[] the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted."

9. Accordingly, there is probable cause to believe that the Defendant Property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as "any property, real or personal,

---

[1] An accession number is a unique number assigned to an artifact when it is added to a collection, that allows the artifact to be connected to records about the artifact.

which constitutes or is derived from proceeds traceable," to a violation of a "specified unlawful activity." The definition of "specified unlawful activity" is set forth in 18 U.S.C. § 1956(c)(7), and includes 18 U.S.C. § 641, *see* 18 U.S.C. § 1956(c)(7)(D).

## PROBABLE CAUSE FOR FORFEITURE

10. In January 2023, the FBI was provided reports pertaining to the National Park Service's (the "NPS") investigation into the theft of No. 2484 from the Springfield Armory.

11. Since January 2023, I have gathered and reviewed records from the NPS, conducted interviews, and reviewed other evidence, for the purpose of obtaining additional information about the theft of No. 2484, and how it came into the possession of a private collector, identified as Collector 4.

12. In short, the investigation revealed that the Defendant Property in Collector 4's possession matches descriptions of No. 2484 missing from the Springfield Armory, and that the Springfield Armory has no records of No. 2484 being deaccessioned or lawfully removed from its collection.

13. On October 29, 2024, United States Magistrate Judge Katherine A. Robertson issued a seizure warrant for the Serial #1444 (24-mj-3147-KAR), which was executed on November 11, 2024, resulting in the seizure of the Defendant Property.

## THE MODEL 1868 CARBINE

14. The model 1868 carbine was a variation of Springfield's model 1868 rifle, designed at the request of the United States Army Chief of Ordinance in August 1869. In a request to the Springfield Armory, the U.S. Army's Chief of Ordinance requested "two… breech loading carbines, suitable for cavalry." These carbines were to be used to determine their suitability for use by the U.S. Army Cavalry. Records from the Springfield Armory show that

three model 1868 carbines were produced in 1869 and one in 1870.  Records also show that the model 1868 carbine did not make it into full production.  The four carbines are the only four produced by the Springfield Armory.

15. While there are several differences between the model 1868 rifle and model 1868 carbine, two main differences are the barrel length and the butt plate.  The barrel length for the carbine variant measures 22.25 inches compared to the rifle, which measures 32.6 inches. The butt plate on the carbine is a "cadet" butt plate, which measures 1.5 inches in width, compared to the rifle butt plate width of 1.7 inches.

16. Of the four documented model 1868 carbines produced, the Springfield Armory maintained two in its collection, serial numbers 15329 and 2234.  The Smithsonian maintains one, serial number 2290.  The fourth is believed to be privately held.

## ACCESSION NO. 2484

17. NPS records indicate that an 1868 carbine with serial number 2234 was recorded in the Springfield Armory collection in 1909, and identified by accession number 3009.  Later in 1925, when the Springfield Armory re-cataloged its collection, the accession number was changed to 2484.  Records maintained by the Springfield Armory provided physical descriptions and marks unique to No. 2484 to include the carbine's serial number 2234, which was matched on both the barrel and receiver; and number "644", which was imprinted into the butt plate. Research conducted by a Springfield Armory curator determined that certain firearms that are part of the Springfield Armory's collection are stamped with a unique identifying number on the butt plate.  The Springfield Armory curator explained the number on the butt plate may be an early cataloging system employed by the museum and is unique to firearms in the Springfield Armory's collection.  This was not a number put on production firearms.

18. No. 2484 was documented and photographed by a researcher in the early 1980's. This documentation included a photograph and description of No. 2484 in their published book about Springfield Armory produced firearms.[2] The researcher noted additional physical markings on No. 2484 to include the cartouches "ESA" and "RW" on the stock. The researcher also noted that the carbine did not have a sling swivel bar.

### IDENTIFICATION OF MISSING ARTIFACTS

19. In 1974, Congress designated the Springfield Armory as a national historic landmark and transferred control of the Springfield Armory from the U.S. Army to the NPS. As part of this transfer, the NPS completed an inventory of artifacts that were transferred from the U.S. Army in 1979. During this inventory, NPS inventoried No. 2484.

20. The NPS did not complete another inventory until 1985, and during this inventory, No. 2484 was determined to be missing.

21. In 1994, the NPS obtained information that No. 2484 was in the possession of a now deceased collector, Gerald Denning (hereinafter "Denning"). Several collectors also provided information to NPS staff explaining how No. 2484 was stolen from the Springfield Armory, and how it made it into Denning's collection.

22. This information continued to be reported to NPS staff through 2002, and included information that to conceal No. 2484's true identity and association to the Springfield Armory, the serial number had been obliterated, and the stock changed. The reporting also claimed Denning did not wish to cooperate with law enforcement.

23. In March 2015, a curator at the Springfield Armory obtained information that a family member of Denning's (hereinafter "Collector 1"), was attempting to sell No. 2484 at the

---

[2] Frasca, Albert, et al., *The .45-70 Springfield, Book I* (1980).

Baltimore Gun Show. The curator reported this information to the FBI, but for reasons unknown to affiant, the information was not acted on.

24. I interviewed Collector 1, who explained that in 2011, after Denning was hospitalized following an injury and entered a long-term care facility, Collector 1 travelled to California to take care of Dennings's belongings, including his firearm collection. Collector 1 explained that Denning had all the firearms numbered, which Collector 1 documented in a spreadsheet in order to track the collection. Collector 1 provided a copy of this spreadsheet to the FBI. No. 2484 was not on the spreadsheet.

25. After Denning died in 2012, Collector 1 began to research, appraise, and then sell Denning's firearms. Collector 1 reached out to other collectors to gather more information on the firearms and determine their value. Collector 1 explained that the only Springfield firearm in Denning's collection was a "US Springfield 1884XC Proto", serial number 267051. A note next to "US Springfield 1884XC Proto", provided by Collector 1 read "may be from Springfield Armory's collection". Collector 1 explained that this was a note from another collector who reviewed the list, but Collector 1 could not provide additional information regarding this comment. Collector 1 explained they did not think much of it at the time.

26. Collector 1 claimed to have no knowledge of or having ever been in possession of No. 2484. However, in a subsequent interview, Collector 1 recalled having seen a reference to a model 1868 in a list of Denning's firearms from 1982, and Collector 1 said they would provide this list to the FBI. However, Collector 1 never produced this list to the FBI.

27. Collector 1 explained they sold the US Springfield 1884XC Proto to another collector (hereinafter "Collector 2") and that this was the firearm Collector 1 was selling at the Baltimore show.

28. I interviewed another collector (hereinafter "Collector 3"). Collector 3 claimed that a mutual friend introduced them to Collector 1 at the Baltimore Gun Show, and Collector 3 asked them about No. 2484. According to Collector 3, Collector 1 explained they had No. 2484 in their car and would sell it to Collector 3. Collector 3 did not purchase No. 2484 and told Collector 1 to return No. 2484 to the Springfield Armory. A few years after the Baltimore Gun Show, Collector 3 was visiting Collector 2, who told Collector 3 they had purchased No. 2484 from Collector 1. Collector 3 also learned that parts of No. 2484 had been changed. Collector 3 was aware that Collector 2 had swapped out parts on another firearm in the past.

29. After Collector 2 died, Collector 2's collection was consigned to Rock Island Auctions (hereinafter "Rock Island") for sale. Legal process served on Rock Island provided a list of firearms cosigned by Collector 2's estate, in addition to an original inventory sent to Rock Island by Collector 2 prior to their death. The inventory provided by Collector 2 had information about the firearms in their collection, to include when and from whom Collector 2 purchased the firearms. A review of that list did not identify any purchases by Collector 2 from Collector 1. There was one purchase from Denning, but it was not No. 2484. Also, there was not a US Springfield 1884XC Proto, or any firearm with serial number 267051 listed in either Rock Island's inventory or the inventory previously provided by Collector 2.

30. A review of the inventories did identify a model 1868 carbine, with serial number 1444, which was described as "Mdl 1868 Springfield Experimental Allin System Carbine, .50 Caliber." Collector 2 noted that Serial #1444 was purchased from "William Edmonds, Cape Cod, MS," on June 16, 1982. William Edmonds is deceased.

31. Additional records from Rock Island revealed the carbine was purchased by another collector (hereinafter "Collector 4") for $5,000 in October 2021.

32. Collector 4 was interviewed by the FBI and consented to the FBI taking custody of Serial #1444 to determine if it was in fact No. 2484. On initial observation, it was determined that a serial number was obliterated from the barrel, and the serial number on the receiver was different from No. 2484. Additionally, the rear butt plate had over-stamps[3] in the general location where No. 2484 would have had number "644" stamped. The following images are photographs of the butt plate of the Defendant Property:



---

[3] An over-stamp is when marks are made over existing marks or text.



33. The Defendant Property was sent to the FBI laboratory in Quantico, Virginia, to determine if the obliterated serial number on the barrel and over-stamped numbers on the butt plate could be recovered. Analysis by the FBI laboratory of the obliterated serial number was unsuccessful. However, analysis of the over-stamps on the butt plate determined that the number was a three-digit number. Per the analysis, "Examination of the obliterated (over-stamping) number located on the butt plate of Item 1 rifle [Serial #1444] determined the number to read "*44." The asterisk represents a number that partially remains and is most likely a "6" or a "0". Research conducted by the Springfield Armory has not identified another firearm stamped "644" on the butt plate in its collection and has not identified a firearm stamped on its butt plate where the number leads with a "0". Additionally, the other model 1868 carbine in the Springfield Armory's collection is marked "645". Therefore, the conclusion is this butt plate is unique to No. 2484.

34. The Defendant Property was also analyzed under an electron scanning microscope in the presence of FBI representatives at a private university to attempt another non-destructive

process to identify the obliterated serial number on the barrel. The analysis was unsuccessful in part because it was determined that the location on the barrel where the serial number should be located was covered in metal solder. The affiant is aware that one of the processes to obliterate a serial number from a firearm is the physical removal of metal through grinding. However, as a result of grinding there is an unevenness between where metal was removed from the surrounding area. A way to even out this area is the addition of metal through soldering and additional grinding. The following image is a photograph of the obliterated serial number on the barrel and serial number on the Defendant Property:



35. The Defendant Property was also examined by a curator at the Springfield Armory. On examination of the carbine, the curator determined that the barrel was the correct length for the model 1868 carbine, and that the Defendant Property had the appropriate breach block and cadet butt plate for a model 1868 carbine. However, in relation to No. 2484, it

10

appeared the stock may have been replaced, in addition to the receiver, lock plate, and trigger guard. The curator explained that the three items you would need to have a correct model 1868 carbine were the barrel, breach block, and butt plate.

## THE SPRINGFIELD ARMORY

36. The Springfield Armory was established in 1777 as a federal arsenal to supply the Continental Army during the Revolutionary War. After the Revolutionary War, the arsenal was established as a federal armory where weapons could be stored and produced. From its establishment, the Springfield Armory was under the control of the United States Army until 1968, when the Springfield Armory was closed. During the time the Springfield Armory was closed, it remained under control of the United States Army until it was officially transferred to the control of the NPS in 1974, after Congress designated the Springfield Armory as a national historic landmark.

37. The Springfield Armory began operating a museum on the premises in 1866, and from that time, until it was closed in 1968, it collected artifacts. The museum reopened to the public in 1978. All of the artifacts in the Springfield Armory's collection are property of the United States Government.

38. The Springfield Armory cannot sell artifacts from its collection and is obliged to preserve artifacts that it acquires. *See, e.g.*, 54 U.S.C. § 102503 (setting forth ways that NPS may obtain, loan, and transfer museum objects, and providing that they may not be sold); 54 U.S.C. § 102504 ("The Secretary shall ensure that museum objects are treated in a careful and deliberate manner that protects the public interest" and requiring a "systematic review and approval process" before transferring, conveying, or destroying museum objects). If an item in its collection were to be transferred to another government entity, that transfer would be documented. *See* NPS Museum Handbook, Part II, Chapter 6 ("Deaccessioning") (available at

https://www.nps.gov/museum/publications/MHII/mh2ch6.pdf) (discussing limits on and documentation process for deaccessioning NPS museum objects and noting that objects should be kept in the public ownership wherever possible).  Additionally, if an item were to be removed from the Springfield Armory's collection, *i.e.*, deaccessioned, this removal would also be documented. *See id.*

39. There is no record of No. 2484 having been transferred to another government entity.  The NPS also has no record of No. 2484 being deaccessioned.

40. Based on information gathered during the investigation, I believe that probable cause exists that No. 2484 was unlawfully removed from the Springfield Armory's collection.

## CONCLUSION

41. Based upon the information described above, probable cause exists to believe that the Defendant Property is property of the United States Government and was removed from the Springfield Armory's collection in violation of 18 U.S.C. § 641, theft or conversion of public money, property, or records, and therefore is subject to civil forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C).

Signed under the pains and penalties of perjury, this 28 day of April, 2025.

Pasquale Morra
Special Agent
Federal Bureau of Investigation

# EXHIBIT 1

**EXHIBIT 1**



